[No. 16252. Department Two. March 16, 1921.]

## WILLIAM D. COMER et al., Appellants, v. MOORE & COMPANY et al., Respondents.[1]

TAXATION (148, 170, 174)—TAX TITLES—ACTION TO FORECLOSE—DE-FENSES—PERSONS ENTITLED TO REDEEM—TENDER—INEQUITABLE FORE-CLOSURE. The grantor in a special warranty deed, expressly subject to a lien for advances made to pay taxes and assessments in a certain sum, which the grantee assumed and agreed to pay on a day certain as part of the purchase price, is bound to the forebearance for the time fixed, whether such grantor was an equitable mortgagee, a holder of a vendor's lien, or simply holder and owner of the tax lien; and hence such grantor cannot foreclose the tax lien prior to such date, and the grantee, on tender of all taxes and liens due, is entitled to have the tax title and sale set aside.

Appeal from a judgment of the superior court for King county, French, J., entered November 3, 1920, granting a nonsuit, in an action to quiet title to certain real estate. Reversed.

*Warren H. Lewis* and *S. Walter Farquhar*, for appellants.

*Farrell, Kane & Stratton, Almon Ray Smith*, and *Flick & Paul*, for respondents.

TOLMAN, J.—Appellants as plaintiffs below brought this action for an accounting and to establish their title to certain real estate; and from a judgment denying them any relief, entered at the close of their case in chief, they appeal.

[1]Reported in 196 Pac. 591.

The facts, as they appear from the testimony offered on behalf of the appellants, about which there is no substantial dispute, are, in the main, as follows: One Nettie E. Burling was the owner in fee of the property in controversy, subject to a mortgage in favor of Moore & Company. On September 11, 1917, a decree of foreclosure was duly entered in the superior court for King county in favor of Moore & Company, foreclosing its mortgage upon the property. An order of sale was duly issued, under which the sheriff proceeding regularly sold the property to Moore & Company, on January 12, 1918. A certificate of purchase in regular form was issued to Moore & Company and the sale confirmed by the court. On March 22 following such sheriff's sale, Moore & Company executed and delivered to one Albert L. MacLeod of Chicago, Illinois, its special warranty deed for the real estate involved, containing the following recitals:

"Subject to a lien upon said property now existing in favor of the American Savings Bank & Trust Company of Seattle, Washington, for advances made for the payment of taxes and assessments, in the amount of $2500 which obligation is due and payable on the 15th day of July, 1918, and which obligation the grantees herein assume and agree to pay; it being agreed that the lien of said advances shall be foreclosable if not paid at maturity date herein fixed in accordance with the statutes of the State of Washington in such cases made and provided."

During the pendency of the action to foreclose, Moore & Company purchased from the previous holder, under an assignment in blank, certificates of delinquency issued by the county treasurer of King county for general taxes on the real estate covered by the mortgage, for the year 1913, under which subsequent taxes for the years 1914 and 1915 have been paid. At the time of purchasing these certificates of delinquen-

cy, Moore & Company borrowed from the American Savings Bank & Trust Company seven hundred and fifty dollars and pledged the certificates to the bank as security therefor. This debt to the bank was fully repaid before the execution and delivery of the deed to MacLeod. The certificates of delinquency were left in the possession of the bank and, on the date of the deed from Moore & Company to MacLeod, there was due thereunder, including the taxes subsequently paid, with interest, the sum of $1,722.61. Moore & Company, probably before the execution of the deed to MacLeod, executed and delivered to the bank its demand note dated January 15, 1918, for $2,500, which, with the certificates, remained in the bank for the purpose of covering future advances should any be obtained, and to secure to Moore & Company a line of credit which apparently it did not avail itself of to any considerable extent; at any rate, there was nothing due the bank thereon at the time the conveyance was made to MacLeod, nor at the time these certificates passed out of the control of the bank. This $2,500 note and the tax certificates were by the bank delivered to Mr. J. T. Moore in October, 1918, at which time the bank endorsed the note, without recourse, to the order of one Charles L. Schaeffer.

During 1918, Moore & Company paid taxes on the property for the years 1916 and 1917, and on December 9, 1918, Moore & Company caused its attorney to commence an action in the superior court in the name of Charles L. Schaeffer as plaintiff to foreclose the tax certificates and the amounts subsequently paid thereunder, being all of the taxes for the years 1913 to 1917, inclusive, and while the tax certificates and the $2,500 note may have been regarded as collateral in the hands of Schaeffer, Schaeffer had no financial interest

therein at the time such foreclosure proceedings were commenced, or at any time thereafter. This tax fore-closure was brought under the statute, and Nettie E. Burling, her husband, and unknown owners, were the only parties defendant. The tax judgment was entered on February 13, 1919, for a total of $2,212.77, together with costs, and an order of sale was issued for the gross amount against all three lots. Schaeffer became the purchaser of the property under the tax foreclosure and a tax deed issued to him on April 29, 1919. The 1918 taxes were not included in the tax judgment or sale and have not been paid.

A few days after receiving the tax deed, Schaeffer, without consideration, conveyed the property to Moore & Company, and Moore & Company immediately thereafter executed a quitclaim deed to one W. G. Oyler, dated May 2, 1919, recorded September 11, 1919, who paid no consideration and was admittedly a trustee for Moore & Company. Oyler conveyed by quitclaim deed to H. S. Turner, and Turner executed a contract of sale to G. W. Ninemire, dated November 26, 1919, and thereafter, with his wife joining, conveyed the property to the National City Bank of Seattle by deed dated December 6, 1919, and assigned the Ninemire contract to the bank. On January 28, 1920, MacLeod and wife conveyed the property to William D. Comer, and assigned him the original certificate of purchase issued by the sheriff to Moore & Company, and Comer shortly thereafter procured a sheriff's deed to be issued to MacLeod under the mortgage foreclosure of Moore & Company.

Appellants, before the commencement of this action, made proper and sufficient tenders, all of which are admitted, of sums sufficient to pay the taxes, interest, costs of tax sale, and to redeem from the $2,500 lien

described in the deed from Moore & Company to Mac-
Leod, and appellants claimed below, and now contend,
that the tax title of Moore & Company through the
foreclosure of Schaeffer is wholly void; that appel-
lants are entitled to a decree establishing and quiet-
ing their title to the property upon the payment of
whatever may be equitably due, and to an accounting
for the rents and profits.

Many points are raised in the briefs and arguments
of counsel, which we do not find it necessary to discuss
in detail. Whether the language quoted from the deed
to MacLeod is sufficient to create an equitable mort-
gage need not be decided. Whether it should be treat-
ed as creating a valid vendor's lien is likewise im-
material, nor is it important to determine whether
MacLeod was a record owner and entitled to notice of
the tax sale under the statute. As we view the facts,
which stood undisputed at the close of appellants' case,
and upon which the learned trial court rendered its
judgment, they were sufficient on the broad grounds of
equity and good conscience to make a *prima facie*
case. Moore & Company, whether an equitable mort-
gagee, or holder of a vendor's lien, or simply the hold-
er and owner of the tax lien upon which, by recitals in
the deed, it had bound itself to forebearance for a time
certain, occupied a relationship towards its grantee
which would forbid its extinguishment of his rights
without notice. *Shepard v. Vincent,* 38 Wash. 493, 80
Pac. 777; *Maher v. Potter,* 60 Wash. 443, 111 Pac. 453.
Taking the view of the trial court for present pur-
poses, that the lien referred to in the deed was the tax
lien only, and the foreclosure mentioned was the statu-
tory foreclosure of a tax lien, yet by causing the pur-
chaser to assume and agree to pay such lien as a part
of the purchase price, and by fixing the due date not

in accord with the terms of the certificates of delinquency under the law, to say nothing of substantially increasing the amount to be paid over what was then actually due upon the certificates of delinquency, all make a foreclosure without notice inequitable almost to the point of bad faith.

The fact, if it be a fact, that appellants paid MacLeod but a small consideration for the conveyance of his rights is wholly immaterial. By the deed from MacLeod and wife, appellants were placed in their shoes, and clothed with all the rights in and to the property which were theretofore vested in their grantors, and this would be true even though they claimed under a deed of gift.

Nor do we find it necessary now to determine whether Turner and wife should have been made parties defendant. If they have stipulated themselves in as defendants, as found by the trial court, then they will be bound by any judgment which may finally be entered. If they are not now parties and are necessary parties, then such a judgment will not be binding upon them, and appellants may lose some of the fruits of victory if they finally prevail; but with that we are not now concerned.

We conclude that appellants' case was sufficient to put respondents upon their defense, and the judgment appealed from is reversed and the cause remanded for further proceedings.

PARKER, C. J., MAIN, MITCHELL, and MOUNT, JJ., concur.